UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OLYMPUS NDT, INC., a
Connecticut Corporation and
OLYMPUS NDT NW, INC., a
Delaware Corporation,

     Plaintiffs,

     v.

GREGORY ELSETH, an individual;
and RONALD BOWLES, an
individual,

     Defendants.

No. CV-08-5009-RHW

**ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR CIVIL
CONTEMPT AND TO REOPEN
CASE; AND DENYING
DEFENDANTS' MOTIONS TO
STRIKE AND FOR SANCTIONS**

Before the Court is Plaintiffs Olympus NDT, Inc., and Olympus NDT NW, Inc.'s (collectively "Plaintiffs" or "Olympus NDT"), Motion for Civil Contempt and to Reopen Case. ECF No. 58. Plaintiffs move the Court to find Defendants Gregory Elseth and Ronald Bowles (collectively "Defendants" or "Mr. Elseth" or "Mr. Bowles") in civil contempt of the Stipulated Permanent Injunction issued by this Court on March 26, 2008. Plaintiffs also seek to reopen the case for the limited purpose of discovering the extent of damages from the use of Plaintiffs' EEPROM chip programming software, *inter alia*. Finally, Plaintiffs ask the Court to impose attorney's fees associated with bringing the motion.

Defendants have responded and oppose the Motion for Civil Contempt and to Reopen the Case. ECF Nos. 65, 84. Defendants also move the Court to strike

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS \* 1**

Plaintiffs' supporting declarations as inadmissible, arguing they are not based on personal knowledge and are conclusory. ECF Nos. 65, 91.

On July 10, 2013, the Court held a show cause evidentiary hearing in Richland, Washington, on Plaintiffs' contempt motion. Plaintiffs were represented by Peter H. Nohle. Floyd E. Ivey represented Defendants. Mr. Elseth was present at the hearing, while Mr. Bowles appeared telephonically. Thereafter, the parties submitted post-hearing briefing, as permitted by the Court, on whether the software at issue was confidential, proprietary or trade secret. ECF Nos. 94, 96.

On August 29, 2013, Defendants filed their Motion for Sanctions, citing ABA Model Rule 3.3 and RPC 3.3. ECF No. 101. The Court is now fully informed; having reviewed all documents filed in support of, and in opposition to, the motions, including all declarations and testimony from the civil contempt hearing, and enters the following order.

## BACKGROUND

Defendants are former employees of Olympus NDT NW, located in Kennewick, Washington. As part of their employment, Defendants signed confidentiality agreements, in which they contractually agreed to safeguard Plaintiffs confidential and proprietary information, *inter alia*. Payne Decl., ECF No. 5 at ¶¶ 7-9, 19-20, Exs. A, B. On February 15, 2008, Mr. Elseth [1] and Mr. Bowles [2] were terminated after Olympus NDT discovered they were operating a joint business venture called All Wave Engineering, Inc. (hereafter "All Wave"). Olympus NDT conducted an internal investigation, including interviews with Defendants, and determined that All Wave was in direct competition with

---

[1] Mr. Elseth was employed by Olympus NDT NW as a Probe Assembler and Probe Designer from May 22, 2006 to February 15, 2008.

[2] Mr. Bowles was employed by Olympus NDT NW (and its predecessor R/D Tech) as an Electronics Test Technician from July 29, 1996 to February 15, 2008.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 2

Olympus NDT. Defendants' activities were largely limited to attempts to develop a wireless eddy current probe and utilize ultrasound technology, which have broad applications in the field of non-destructive testing or "NDT."

Plaintiffs then filed a complaint on February 19, 2008, alleging: breach of contract, unfair competition (based on common law, statutory, and federal claims), conversion, civil conspiracy, breach of duty of loyalty, and misappropriation of Plaintiffs' trade secrets, confidential, and proprietary information. ECF No. 1.

The Court entered a temporary restraining order ("TRO") on February 26, 2008. ECF No. 16, 20. The TRO prohibited Defendants from continuing to make unauthorized use of Plaintiffs' protected information, and from violating contractual and legal obligations to their former employer Olympus NDT. *Id.*

On March 26, 2008, the parties agreed to a Stipulated Permanent Injunction. *See* ECF No. 35. Under the terms of the injunction, Defendants were to refrain from the use of and to return or delete all Plaintiffs' confidential, proprietary, or trade secret information or property. *Id.* at ¶¶ 1-5. Defendants were also enjoined for a two-year period beginning on March 26, 2008 through March 26, 2010, from participation in the non-destructive testing industry with respect to eddy current and ultrasound technology. *Id.* at ¶¶ 6-9. In addition, Defendants agreed not to solicit or engage any current or former Olympus NDT employees during the two-year time period noted above. *Id.* at ¶ 12.

Defendants were also required to certify their compliance within ten days of the issuance of the injunction. *Id.* at ¶¶ 3-4. Thereafter, Defendants delayed in complying with the Court's order, which resulted in additional motions by Plaintiffs to enforce Defendants' compliance. *See* ECF Nos. 38-56. Several months later on November 5, 2008, Defendants certified, under penalty of perjury and the contempt powers of the Court, they had "no property or any copies of Plaintiffs' confidential, proprietary or trade secret information" and that "all electronic files

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 3**

with information belonging to Olympus NDT ha[d] been provided to Olympus NDT and ha[d] been permanently erased from all computers, electronic storage devices and email accounts." Nohle Decl., ECF No. 62 at 12-15, Ex. B. The case was then closed on May 20, 2010. ECF No. 57

On May 29, 2012, Olympus NDT employee Lee Nye received an unsolicited email from All Wave independent contractor Killian Emory. *See* Emory Decl., ECF No. 61 at ¶¶ 1-4, Ex. A. In his email, Mr. Emory alerted Olympus NDT to the fact that Mr. Elseth had in his possession several EEPROM chips, which had been programmed using a copy of Olympus NDT's EEPROM chip programming software. *Id.* Mr. Emory recounted that Olympus NDT's EEPROM software was being utilized by Mr. Elseth to develop probes for All Wave. *Id.* Mr. Emory also revealed that Mr. Elseth had initially hired him as a software engineer to write computer programming code related to the development of probes. In that capacity, Mr. Emory was provided a copy of Olympus NDT's EEPROM chip programming software by Mr. Elseth. *Id.* Mr. Emory also attached a copy of the software in question in an email attachment to Olympus NDT. *See* Weisner Decl., ECF No. 79 at Ex. A.

Thereafter, two Olympus NDT employees confirmed that the EEPROM software given to Mr. Emory was exclusively owned by Plaintiffs' and not licensed to Defendants or All Wave Engineering. As a result, Plaintiffs filed the instant Motion for Civil Contempt and to Reopen Case and noted for hearing on March 15, 2013. ECF No. 58.

On April 23, 2013, the Court found an evidentiary hearing was necessary, as disputed issues of material fact remained based on the declarations submitted, and required Defendants to appear and show cause why they should not be held in civil contempt of the Stipulated Permanent Injunction. ECF No. 81. Specifically, the parties were asked to address whether Olympus NDT's EEPROM software,

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 4**

allegedly retained and utilized by Defendants, was obtained legally through the "Kaizen" process; or was the material in question Plaintiffs' confidential, proprietary, or trade secret property misappropriated by Defendants during their employment at Olympus NDT, and in violation of the Court's prior order. *Id.* at 5. The parties then submitted supplemental briefing prior to the hearing on July 10, 2013. *See* ECF Nos. 82, 84.

On July 9, 2013, Defendants filed a motion to strike portions of the declarations and documents relied upon by Plaintiffs. ECF No. 91. Plaintiffs replied, ECF No. 98, to which Defendants responded, ECF No. 99.

On July 10, 2013, the Court held an evidentiary hearing on Plaintiffs' contempt motion in Richland, Washington. At the conclusion of the hearing, the Court also permitted the parties to submit additional post-hearing briefing on copyright and property issues relating to the confidential, proprietary, or trade secret nature of the disc -- in order to ascertain whether Defendants' validly obtained a copy of the software in question through the "Kaizen" process. *See* ECF Nos. 94, 96.

On August 29, 2013, Defendants filed a Motion for Sanctions pursuant to ABA Model Rule 3.3 and RPC 3.3. ECF No. 101. Plaintiffs filed a response in opposition on September 12, 2013. ECF No. 102. The Court then allowed Defendants additional time to submit their reply on October 4, 2013. *See* ECF Nos. 105, 106.

## LEGAL STANDARD

**A.     Contempt Finding**

The Court has inherent power to enforce compliance with a lawful order through civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370 (1966). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re*

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 5**

*Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order."). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (internal citation omitted).

The contempt "need not be willful," and there is no good faith exception to the requirement to obey a court order. *In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Dual-Deck,* 10 F.3d at 695. A party seeking sanctions must show: (1) a violation of the order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Id.*

In this case, Olympus NDT must prove by clear and convincing evidence that Defendants violated the Stipulated Permanent Injunction.

## DISCUSSION

### A.     Plaintiffs' Motion for Civil Contempt

Plaintiffs argue that Defendants did not return all of their confidential, proprietary, or trade secret information and property, as required by the Stipulated Permanent Injunction, and as attested to in their certifications to the Court. ECF No. 60. Specifically, Olympus NDT argues the EEPROM chip programming software was utilized in furtherance of Defendants' competitive business venture, All Wave Engineering. *Id.* Plaintiffs argue this conduct violated the terms of the Stipulated Permanent Injunction, which required Defendants to "permanently

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 6**

refrain from using . . . for any purpose, any of Plaintiffs' confidential, proprietary, or trade secret information" and to return all "property and all copies of Plaintiffs' confidential, proprietary, or trade secret information in their possession or under their control" to Olympus NDT. *See* ECF No. 35 at ¶¶ 1-3.

Defendants do not dispute the possession of the EEPROM chip programming software or their possession of probes, electronic circuit boards, and other materials. ECF No. 65 at 6, 11. However, Defendants argue these materials were obtained lawfully during their employment as part of a clean-out process utilized by Olympus NDT called "Kaizen" in January and February of 2008. Defendants argue the "Kaizen" materials, including the chip programming software at issue, were either thrown out in the trash, or sold to Plaintiffs' employees at auction. Mr. Elseth also testified there was no EEPROM code in any product developed by All Wave, nor has the Company generated any revenue.

Additionally, Defendants argue they had no notice as to whether the disc in question containing the software was "trade secret." They submit that Olympus NDT's motion must fail because the EEPROM software has not been shown to be trade secret property. Finally, Defendants submit that the main purpose of the Stipulated Permanent Injunction, a wireless eddy current probe, never existed. They argue their website and list of purported products was a "mock up" and merely a "garage science experiment."

### 1. Relevant Terms of the Stipulated Permanent Injunction

On March 26, 2008, the Court entered the Stipulated Permanent Injunction, in which Defendants Elseth and Bowles agreed to the following terms, *inter alia*:

1. That Defendants shall permanently refrain from using or disclosing in any way, for any purpose, any of Plaintiffs' confidential, proprietary, or trade secret information, including, but not limited to, the wireless eddy current probe;

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 7

2.      That within 10 days of the entry of this Stipulated Permanent Injunction, Defendants shall return to Plaintiffs all of Plaintiffs property and all copies of Plaintiffs' confidential, proprietary, or trade secret information still in their possession or under their control, including, but not limited to, the wireless eddy current probe;

3.      That within 10 days of the issuance of this Stipulated Permanent Injunction, Defendants shall certify to Plaintiffs under penalty of perjury and the contempt powers of this Court that they have returned
to Plaintiffs all of Plaintiffs' property and all copies of Plaintiffs' confidential, proprietary, or trade secret information in their possession or under their control, including, but not limited to, the wireless eddy current probe;

4.      That within 10 days of the issuance of this Stipulated Permanent Injunction, Defendants shall electronically provide to Plaintiffs, care of Karen Smith, copies of all electronic files with information belonging to Plaintiffs and shall thereafter permanently delete the same from all computers, electronic storage devices and email accounts of Defendants;

5.      That within 10 days of the issuance of this Stipulated Permanent Injunction, Defendants certify to Plaintiffs under penalty of perjury and the contempt powers of this court that all electronic files with information belonging to Plaintiffs have been provided to Plaintiffs electronically, and that all copies of information belonging to Plaintiffs have been permanently erased from all computers, electronic storage devices and email accounts of Defendants;

* * *

7.      That for the period from March 26, 2008 through March 26, 2010, Defendants shall refrain from any work in the non-destructive testing industry involving ultrasound technology (including conventional ultrasound, phased array, and bond testing);

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 8**

* * *

> 12.    That for the period from March 26, 2008, through March, 26, 2010, Defendants shall refrain from solicitation or engaging, directly or indirectly, any current or former employees of Plaintiffs or their subsidiaries or affiliates[.]

ECF No. 35 at ¶¶ 1-5, 7, 12.

As a preliminary matter, the court finds the Stipulated Preliminary Injunction is a specific and definite court order. *See Gates v. Shinn*, 98 F.3d 463, 467-68 (9th Cir. 1996) (noting "[s]pecificity in the terms of [an injunction] is a predicate to a finding of contempt.") Here, the language of the Stipulated Permanent Injunction supports such a finding. Furthermore, Defendants do not contest the language of the injunction, and the Court finds the prior order clearly describes the prohibited or required conduct.

## 2.    Defendant Elseth Violated the Stipulated Permanent Injunction by his Retention and Use of Olympus NDT's EEPROM Chip Programming Software

The Court must next analyze whether the evidence submitted by Plaintiffs supports a contempt finding by clear and convincing evidence. For the reasons set forth below, the Court finds that Defendant Elseth violated the terms of the Court's Stipulated Permanent Injunction by his use or retention of Olympus NDT's EEPROM chip programming software. However, Plaintiffs have not met their burden, through clear and convincing evidence, that Defendant Bowles, who now resides in Wyoming,[3] was a party to the conduct giving rise to the violations of the injunction. Thus, Plaintiffs' Motion for Civil Contempt is granted, in part, as to Defendant Elseth and denied, in part, as to Defendant Bowles.

---

[3] *See* Bowles Decl., ECF No. 69 at 4.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 9**

First, the Court finds that Mr. Elseth's acquisition of the disputed software was not part of the "Kaizen," and was retained and utilized in violation of the Stipulated Permanent Injunction. Although Defendants claimed the software at issue was obtained through the "Kaizen" Process, testimony at the hearing revealed otherwise. Aaron Grundmeier, General Manager of Olympus NDT's Kennewick facility, testified that the "Kaizen" referred to a clean-out and rearranging and "reorganiz[ation] of a certain process or area of [Olympus NDT's] business." Hearing Transcript (hereafter "Tr. __"), ECF No. 93 at 70. As General Manager, Mr. Grundmeier and his management team were tasked with deciding which classes of materials were part of the Kaizen events that occurred in January and February of 2008. Tr. 71, 97-98. On occasion, these materials were offered to employees or auctioned off. *Id.* Mr. Grundmeier testified that some old instrumentation (e.g., probes) and old personal computers were sometimes discarded. *Id.* However, the Kaizen materials were primarily old office supplies and outdated product. *Id.* Mr. Grundmeier also detailed the process of how his management team ultimately selected which materials were to be included in the Kaizen. Tr. 97-98.

Notably, when questioned by the Court, Mr. Grundmeier testified that CD-ROMs, including the disc containing Plaintiffs' EEPROM chip programming software at issue, "were never part of any sort of auction or giveaway" during the January and February 2008 Kaizen events. Tr. 98. Additionally, Mr. Grundmeier disputed Mr. Elseth's former testimony/declaration that Olympus NDT employees were told to clean out and remove anything without an identifying "asset tag," which Mr. Elseth argued included the disc at issue *Compare* Tr. 74 *with* Tr. 132-33.

The Court's findings are also supported by the testimony of Killian Emory. Mr. Emory, a former independent contractor with All Wave, initially revealed to

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 10**

Olympus NDT that Mr. Elseth was still in possession of their software obtained from his former employment. Mr. Emory testified that Mr. Elseth stated Olympus NDT would be "mad" if they knew he retained their EEPROM software. Tr. 108. Mr. Emory also testified that he saw Mr. Elseth make use of the EEPROM chip programming software, and that Mr. Elseth used Olympus NDT's software in furtherance of the testing and development of All Wave probes. Tr. 107.

Based on the foregoing, the Court finds Mr. Elseth's testimony that he received the disc containing Olympus NDT's EEPROM chip programming software from either the Kaizen, or at an employee auction, is not credible. *See* Tr. 132-33. In addition, Mr. Elseth testified that it was his intent to utilize Plaintiffs' software to "legally" engineer All Wave products. *See* Tr. 134, 146. The Court finds Mr. Elseth's use and exploitation of Plaintiffs' EEPROM software was not based on a good faith and reasonable interpretation of the Stipulated Permanent Injunction -- as Mr. Elseth would have had a strong motivation to keep Olympus NDT's software in an attempt to engineer his own products for All Wave. *See* Tr. 146.

The Court now addresses Defendants' second argument, that the software at issue was not protected, as it was not marked proprietary, confidential, or trade secret. ECF Nos. 84 at 1-6, 96 at 7-8; *see also* Tr. 39-40. Plaintiffs respond that both Defendants signed confidentiality agreements, in which they contractually agreed to safeguard Plaintiffs' confidential and proprietary information, which Olympus NDT submits includes the software at issue. *See* Tr. 10-12, 57.

There is no dispute whether Defendant Elseth signed the Employee Proprietary and Confidential Information and Developments Agreement at issue. *See* Tr. 10-11; *see also* Payne Decl., ECF No. 5, at Ex. A (Elseth Agreement). Specifically, Defendant Elseth was required to safeguard "all information and know how, whether or not in writing, of a private, secret or confidential nature

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 11**

concerning the Company's business or financial affairs," including "software and codes," as well "all disks, files . . . or any other record containing Proprietary Information . . . which shall come into the employee's custody or possession[.]" *Id.*

Defendant Elseth testified that he used the software in question throughout his employment at Olympus NDT. Tr. 37. Testimony at the hearing by Mr. Emory also revealed that in exploiting Olympus NDT's chip programming software, a user was alerted to a copyright notice [4] embedded within the programming code. Tr.108. Based on the testimony at the hearing, Defendants' argument there was no notice the material in question was not protected, as it was not marked "trade secret," does not disqualify it as proprietary or confidential information. Further, Mr. Elseth's argument the software was "worthless" goes against the weight of the evidence presented at the hearing that he retained the software to engineer All Wave's products to function with Olympus NDT's products. *See* Tr. 145-46.

Finally, the Court's contempt finding is buttressed by the fact that Mr. Elseth returned to Olympus NDT some, but not all, of the materials allegedly obtained from the Kaizen, *after* the entry of the Stipulated Permanent Injunction. *See* Portsmouth Decl., ECF No. 26 at ¶¶ 4-8, Ex. A; *see also* Grundmeier Decl., ECF No. 25 at ¶¶ 6-12, Exs. B, C. However, Mr. Elseth did not return the disc containing Plaintiff's EEPROM chip programming software in question, which the Court notes he utilized throughout his employment with Olympus NDT. At the hearing, Mr. Elseth testified he unknowingly retained the CD-ROM with Olympus NDT's software, and did not recall seeing it again until All Wave independent

---

[4] The Court does not mean to suggest that Defendants violated any copyright laws, as Plaintiffs point out that "such a claim would likely be precluded by the lack of registration under 17 U.S.C. § 411." ECF No. 94 at 13; *see also* 17 U.S.C. § 102, *et seq*. However, the copyright warning within the programming code provides additional evidence as to the proprietary or confidential nature of the EEPROM chip programming software retained and utilized by Defendant Elseth.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 12

contractor Killian Emory requested software to aid him in the development of code for All Wave products. Tr. 34. Again, the Court finds Mr. Elseth's testimony is not credible, as the disc containing the software at issue was likely retained to reverse engineer All Wave Products using Olympus NDT technologies and software.

As set forth above, the Court is satisfied that although the CD-ROM and software at issue was not marked "trade secret," it was adequately protected as Olympus NDT's proprietary or confidential information. Thus, it fell within the class of protected materials in the Employee Proprietary and Confidential Information and Developments Agreement signed by Defendant Elseth. Furthermore, Olympus NDT has confirmed the EEPROM software retained by Mr. Elseth was obtained through his former employment with Olympus NDT and exclusively owned by Plaintiffs' and not licensed to Defendants or All Wave Engineering. Smith Decl., ECF No 63 at ¶¶ 4-5; Weisner Decl., ECF No. 64 at ¶ 8.

Accordingly, the Court is satisfied that Plaintiffs' have carried their burden in demonstrating, by clear and convincing evidence, that Defendant Elseth violated the terms of Paragraphs Two (2) and Four (4) of the Stipulated Permanent Injunction by retaining and exploiting Olympus NDT's EEPROM chip programming software. Plaintiffs' evidence also confirmed that such software remained at a minimum the confidential or proprietary information of Olympus NDT, and was not licensed to Defendants or to All Wave Engineering. Also, Defendant Elseth's actions in utilizing the software at issue to legally engineer All Wave products do not amount to a good faith and reasonable interpretation of the Stipulated Permanent Injunction. In sum, Plaintiffs' contempt motion is granted, in part, as to Defendant Elseth.

///

///

///

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 13

### 3.    Defendant Elseth's Additional Violations of Paragraphs Seven and Twelve of the Stipulated Permanent Injunction

Plaintiffs also seek to hold Defendants in contempt of Paragraphs Seven (7) and Twelve (12) of the Stipulated Permanent Injunction. ECF No. 94 at 13-14. Plaintiffs' evidence is based on declarations submitted by Defendants in conjunction with the civil contempt motion, and witness testimony at the show cause hearing. Plaintiffs argue this evidence amounts to additional violations of the Stipulated Permanent Injunction, previously unknown to Olympus NDT before the filing of their initial contempt motion. Specifically, Plaintiffs allege that Defendant Elseth violated Paragraphs Seven (7) and Twelve (12) by meeting with Aaaron Grundmeier in April of 2009. During the meeting, Plaintiffs argue Defendant Elseth solicited Mr. Grundmeier about the possibility of becoming CEO of All Wave. It is also alleged that Mr. Elseth demonstrated an ultrasonic probe developed by All Wave that was purportedly more sensitive than Olympus NDT's probes. Further, Plaintiffs argue that Defendants' declarations submitted by All Wave associates William Holland and Richard Lundy, former employees of Olympus NDT, violate paragraph 12 of the Stipulated Permanent Injunction.

Defendants were given an opportunity to respond to these allegations in post- hearing briefing. However, they chose to focus their efforts by filing additional motions to strike, and for sanctions, and did not respond to the additional contempt violations cited above.

Paragraph Seven (7) of the Stipulated Permanent Injunction required: "[t]hat for the period from March 26, 2008, through March 26, 2010, Defendants shall refrain from any work in the non-destructive testing industry involving ultrasound technology." ECF No. 35 at ¶ 7. Paragraph Twelve (12) of the Stipulated Permanent Injunction provided: "[t]hat for the period from March 26, 2008, through March 26, 2010, Defendants shall refrain from solicitation or engaging,

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 14

directly or indirectly, any current or former employees of Plaintiffs or their subsidiaries or affiliates[.]" *Id.* at ¶ 12.

Here, the Court finds, by clear and convincing evidence, that Defendant Elseth violated Paragraphs Seven (7) and Twevle (12) of the Stipulated Permanent Injunction. This finding is supported by the testimony of Aaron Grundmeier, formerly General Manager of Olympus NDT in Kennewick, Washington. Mr. Grundmeier testified that Defendant Elseth contacted him in March of 2009. Tr. 78. Thereafter, Mr. Elseth met with Mr. Grundmeier and discussed the possibility of him becoming CEO of All Wave. Tr. 78. During the meeting, Mr. Elseth also showed Mr. Grundmeier a composite testing device developed by All Wave, which he demonstrated and claimed was more sensitive than Olympus NDT's probes. Tr. 78-79, 93-94. Mr. Grundmeier then testified the device was a form of ultrasonic technology, as the probe could be used to test an ultrasonic device. Tr. 93-94.

The Court's additional contempt findings are also supported by Defendants' own declarations submitted by former Olympus NDT employees William Holland and Richard Lundy. The declaration of Mr. Holland reveals that he was employed part-time by All Wave since the spring of 2008, after his employment with Olympus NDT ended in 2007. *See* Holland Decl., ECF No. 66 at ¶¶ 1-2. Similarly, the declaration of Mr. Lundy reveals that he worked part-time with All Wave since February of 2009, after his employment with Olympus NDT ended in April of 2008. *See* Lundy Decl., ECF No. 67 at ¶¶ 1-2. At the hearing, Mr. Elseth confirmed that Mr. Holland and Mr. Lundy were affiliated with All Wave Engineering. Tr. 16. He further confirmed the declarations cited above were correct. Tr. 17-18. Mr. Elseth then testified that it was his understanding Mr. Holland and Mr. Lundy's affiliation with All Wave did not violate the terms of Paragraph Twelve (12) as they were not compensated for their services, and only worked on "projects." Tr. 19-20. The Court also notes that Mr. Holland and Mr.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 15**

Lundy are listed as "Directors" of All Wave Engineering, Inc., based on corporate documents publically accessible on the Washington Secretary of State's "Corporations Division – Registration Data Search." *See* Supp. Nohle Decl., ECF No. 80, at Ex. A.

Therefore, based on the evidence identified above, Mr. Elseth is also found to have violated Paragraph Seven (7) by demonstrating ultrasound technology during the prohibited time period; and Paragraph Twelve (12) by his solicitation of Mr. Grundmeier, Mr. Holland, and Mr. Lundy, all former employees of Olympus NDT during the period of March 26, 2008, through March 26, 2010.

### 4. Defendant Bowles

However, the Court is unable to hold Defendant Bowles in contempt. There is no evidence of his involvement in the events giving rise to the violation of the Stipulated Permanent Injunction. *See* Tr. 60-61. Mr. Bowles testified that he did not make use of the software at issue, nor was he involved in Defendant Elseth's use of the EEPROM chip programming software or development of probes by All Wave Engineering. *Id.* Moreover, there was no testimony or evidence submitted that Mr. Bowles engaged or solicited former Olympus NDT employees, or was involved in the demonstration of the composite testing device in April of 2009. Therefore, Plaintiffs' contempt motion is denied, in part, as to Defendant Bowles.

## B. Plaintiffs' Motion to Reopen

Plaintiffs also seek to reopen the case, for the limited purpose of discovering the extent of damages from the use of Plaintiffs' EEPROM chip programming software. Plaintiffs invite the Court to hold a follow-up hearing in November to determine damages based on Defendants' use of their confidential and proprietary property, including, but not limited to, all revenue relating to any probes containing chips that were directly or indirectly programmed using copies of Plaintiffs' EEPROM chip programming software. ECF Nos. 58-1 at 2, 94-1 at 3-4. Plaintiffs

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS** * 16

also seek to hold Defendants' accountable for the value of developing Olympus NDT's EEPROM chip programming software. *Id.* Finally, Plaintiffs ask the Court to impose attorneys' fees associated with bringing the instant motion based on Defendants' contemptuous conduct.

Here, Plaintiffs' request to schedule a follow-up hearing in order to assess the appropriate contempt sanctions including: damages, attorneys' fees, and costs is reasonable. The Court agrees that Plaintiffs should have to opportunity to present evidence of any revenue gained by Defendant Elseth or All Wave Engineering based on his use of the EEPROM chip programming software and the value of that software, and additional violations involving Paragraphs Seven (7) and Twelve (12) of the Stipulated Permanent Injunction. Also, Plaintiffs may submit briefing regarding their attorneys' fees and costs associated with bringing the instant motion, based on Defendant Elseth's contemptuous conduct. Thus, Plaintiffs' motion to reopen the case is granted, only to the extent necessary to determine the appropriate contempt sanctions as to Defendant Elseth noted above.

## C. Defendants' Motion to Strike

Defendants initially moved the Court to strike the Declarations of Killian Emory and Wayne Weisner. ECF No. 65 at 2-3, 5. In addition, on July 9, 2013, Defendants moved to strike: (1) Declaration of Michael Canty [ECF No. 3]; (2) Declaration of William Edie [ECF No. 4]; (3) Declaration of John Payne [ECF No. 5]; (4) Declaration of Karen Smith [ECF No. 6]; (5) Declaration of William Edie [ECF No. 24]; (6) Declaration of Kathy Portsmouth [ECF No. 26]; and, (7) Declaration of Nathan Tyssen [ECF No. 28].

Citing Fed. R. Civ. P. 56 and Fed. R. Evid. 602, Defendants argue such declarations are inadmissible, as they are not based on personal knowledge and contain conclusory statements not supported by an adequate factual foundation. In regard to summary judgment, Rule 56(c)(4) states:

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 17**

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). Similarly, Federal Rule of Evidence 602 provides "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Here, the Court can discern no cognizable basis for striking the disputed declarations. The Court agrees with Plaintiffs that the summary judgment standards cited by Defendants do not govern a motion for civil contempt. Also, the Court based the contempt findings set forth above principally on hearing the testimony and live witnesses presented on July 10, 2013. This included testimony by Plaintiffs' witnesses Killian Emory and Wayne Weisner. Finally, a review of the declarations specifically relied upon by the Court, and identified as objectionable by Defendants, reveals the declaration are based on the requisite level of personal knowledge and not conclusory. *See, e.g.*, Payne Decl., ECF No. 5; Portsmouth Decl., ECF No. 26.

The Court further notes the majority of the declarations that Defendants seek to strike were filed in support of Plaintiffs' Motion for a Temporary Restraining Order, and ensuing Motion for Preliminary Injunction. It is evident from the Court's review these declarations have little to do with the instant dispute -- as the thrust of Defendants' objections deal with whether or not a wireless eddy current probe existed, and whether All Wave actually produced any products listed on the website discovered by Plaintiffs in 2008. [5]

---

[5] In fact, the Court responded to Defendants' arguments disputing the facts of the underlying basis of the injunction, and refocused Defense Counsel several times during the hearing, e.g.: "I'm here on the issue of whether something that was

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 18**

Therefore, Defendants' motions to strike are denied.

**D.    Defendants' Motion for Sanctions**

Defendants move the Court for sanctions against Plaintiffs and their counsel, alleging they presented false evidence to the Court, and failed to satisfy their duty of candor, all in violation of Washington Rule of Professional Conduct ("RPC") 3.3 and American Bar Association ("ABA") Model Rule of Professional Conduct 3.3. ECF No. 101. Specifically, Defendants argue that Plaintiffs' memoranda and declarations detailing the "actual existence" of a wireless eddy current probe and the products listed on All Wave's internet website were false. ECF No. 101 at 7. Defendants contend that testimony at the civil contempt show cause hearing on July 10, 2013, demonstrated that a wireless eddy current probe never existed and that All Wave's website was a mock-up and "school project," merely reciting generic elements for accused devices also not in existence. *Id.*

Defendants also argue that Plaintiffs engaged in a "pattern of misconduct" in 2008, and now repeated in 2013. ECF No. 106 at 10. Citing *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994), Defendants liken the sanctionable pattern of misconduct in that case, which was based on the filing of unauthorized pleadings, to the "repeated filing of unfounded memoranda and declarations" in the instant case. ECF No. 106 at 10.

Plaintiffs respond in opposition and argue the evidence submitted in this matter show they have fulfilled their obligations of truthfulness and candor to the Court and Defendant. ECF No. 102. Plaintiffs assert the sanctionable conduct identified by Defendants relates back to issues already litigated and consented to

proprietary was improperly used, and damages about whether [Defendants] were wrongfully terminated – or kept out of a market would be a different lawsuit." *See generally* Tr. 129-131.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 19**

by Defendants – including the initial Motion for Temporary Restraining Order and the entry of the Stipulated Permanent Injunction *Id.* at 10.

Washington RPC 3.3 – Candor Toward the Tribunal, provides in part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client unless such disclosure is prohibited by Rule 1.6;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding.

Washington Rule of Professional Conduct ("RPC") 3.3. The text of ABA Model 3.3 is analogous. *See* ABA Model Rule of Professional Conduct 3.3

Here, the Court denies Defendants' motion for sanctions for two reasons. First, there is no evidence that Plaintiffs presented false information to the Court. Defendants submit the introduction to Plaintiffs' Memorandum of Law in Support of Motion for Temporary Restraining Order was not well grounded in fact or have a colorable basis in law. ECF No. 101 at 8. However, the declarations and evidence proffered, and the ensuing investigation by Olympus NDT, showed that Defendants maintained a website, which purported to offer technologies related to their employment with Olympus NDT. *See* Canty Decl., ECF No. 23 at ¶¶ 9-10 and Ex. B. Moreover, the Court has reviewed the declarations in support of the Motion for Temporary Restraining Order [ECF Nos. 3-6, 9, and 15]; and the declarations in support of the Plaintiffs' Motion for Preliminary Injunction [ECF

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 20**

q:\rhw\acivil\2008\olympus ndt\mx. for civil contempt\order contempt.docx

Nos. 22-29] and found they do not contain false evidence, nor were they filed for an improper purpose. Likewise, the Court can detect no "pattern of misconduct," as the conduct at issue alleged by Defendants does not meet the "unreasonable and vexatious" standard of the plaintiff's counsel in *Smith* who was cited for contempt when he re-noticed the same motion previously denied by the district court. 31 F.3d at 1488.

Second, Defendant Elseth's testimony during the contempt show cause hearing regarding whether All Wave's website was merely a "mock-up" (as it was not publicly available) and whether a wireless eddy current probe "actually existed" does not provide a basis for sanctions or to re-litigate the underlying facts of the Stipulated Permanent Injunction. *See* Tr. 49-51. At this juncture, it is too late for Defendants to attack the legal or factual basis of the Stipulated Permanent Injunction. *See, e.g., Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948) (contempt proceeding does not open to reconsideration the basis or scope of the order alleged to have been disobeyed).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Civil Contempt, ECF No. 58, is **GRANTED in part and DENIED in part**. Defendant Elseth is found to be in contempt of the Stipulated Permanent Injunction, ECF No. 35, as Plaintiffs' have demonstrated, by clear and convincing evidence, that Defendant Elseth:

> (a) retained and utilized Plaintiffs' EEPROM chip programming software in violation of Paragraphs Two (2) and Four (4);

> (b) engaged or solicited former Olympus NDT employees William Holland, Richard Lundy, and Aaron Grundmeier during the period March 26, 2008 to March 26, 2010, in violation of Paragraphs Twelve (12); and

> (c) was involved in the development of ultrasound technology for the non-destructive testing industry during the period March

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 21**

26, 2008 to March 26, 2010, in violation of Paragraphs Seven (7).

Plaintiffs' Motion as to Defendant Bowles is **DENIED**, as the Court finds there is insufficient evidence, by clear and convincing standards, to find him in violation of the Stipulated Permanent Injunction.

2. Plaintiffs' Motion to Reopen, ECF No. 58, is **GRANTED.** Plaintiffs are permitted to engage in limited discovery directed toward Defendant Elseth and All Wave Engineering, Inc., related to Mr. Elseth's violations of the Stipulated Permanent Injunction; and in particular with respect to the products, services or solutions created or developed, in whole or part, through the use of the EEPROM chip programming software, and its underlying value, as referenced above in Paragraph 1. Such limited discovery shall include former employees of Plaintiffs who were engaged by Defendant Elseth or All Wave Engineering, Inc., between March 26, 2008 and March 26, 2010, including any such products, services, or solutions that involve ultrasound technology related to the non-destructive testing industry developed during March 26, 2008 to March 26, 2010.

3. Defendants' Motion to Strike Portions of Documents and Declarations, ECF Nos. 65 and 91, are **DENIED**.

4. Defendants' Motion for Sanctions, pursuant to ABA Model Rule 3.3 and Washington RPC 3.3, ECF No. 101, is **DENIED**.

5. The parties are **DIRECTED** to submit a joint status report to determine the appropriate contempt sanction in the above-captioned matter **by November 5, 2013**. The joint status report shall also include a briefing schedule regarding the extent of the damages sought by Plaintiffs. Plaintiffs may also submit briefing informing the Court of the amount of attorneys' fees requested, based upon Defendant Elseth's contempt violations, along with a declaration and documentation supporting such request. Defendant Elseth may thereafter submit a

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 22

q:\rhw\acivil\2008\olympus ndt\mx. for civil contempt\order contempt.docx

response to any contested amounts in question. The Court will schedule a hearing once the parties have submitted the joint status report and briefing schedule noted above.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 21st day of October, 2013.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CIVIL CONTEMPT AND TO REOPEN CASE; AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR SANCTIONS * 23**